**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4086-23

IN THE MATTER OF THE
ESTATE OF JOHN C. GAMBLE.

_____

Submitted March 9, 2026 – Decided July 31, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. P-000332-22.

Aihong You, attorney for appellant Zheng Wang.

Drazin & Warshaw, PC, attorneys for respondent Donna Delaney (Thomas J. DiChiara, on the brief).

PER CURIAM

In this probate matter, plaintiff Zheng Wang, the decedent John C. Gamble's surviving spouse, challenges a June 18, 2024 Chancery Division order that awarded: 1) her an elective share of her late husband's estate in the amount of $21,781.85, and 2) defendant $394 in response to her counterclaim. The court

subsequently entered an August 1, 2024 amended judgment that reduced plaintiff's elective share to $14,806.27. We affirm all the orders under review.

I.

The decedent died on February 6, 2022 and is survived by plaintiff, his second wife, and his daughter from a prior marriage, the defendant, who was named executrix of the estate. At the time of his death, the decedent and plaintiff were married and living together in Middletown. The decedent's will left all assets in his name to defendant, except for a joint brokerage account with plaintiff.

Plaintiff filed a complaint seeking her statutory elective share and an accounting from the estate. Defendant counterclaimed, alleging that plaintiff converted decedent's personal property such as jewelry and cash to her own use and possession, plaintiff did not vacate the Middletown residence in a timely fashion, and that plaintiff's actions caused property damage to the marital home.

The matter proceeded to a bench trial conducted over six non-consecutive days. Before trial, plaintiff moved in limine and sought sanctions and an adverse inference maintaining defendant committed spoliation of relevant evidence and failed to produce documents belonging to the estate. Plaintiff's counsel maintained that they made repeated attempts to obtain certain documents from

2

defendant and argued that defendant allegedly hid material documents from plaintiff. The court decided to reserve decision on plaintiff's application and stated it would consider defendant's arguments in the context of the evidence produced at trial.

At trial, plaintiff testified and also introduced bank statements, video evidence, and appraisal reports. She specifically testified regarding her marriage, the circumstances surrounding her immigration to the United States, and living with decedent in Middletown. She explained decedent's illness and death and detailed defendant's behavior after her husband's death which ranged from incidents where defendant removed mail and plaintiff's car from the Middletown property as well as an incident where defendant and her husband came into the house unannounced.

Shen Guang Dai, a friend of the Gamble family, testified that she checked up on decedent while plaintiff and decedent were living separately. She also stated she had visited decedent's home at least ten times before plaintiff arrived in the United States. She further testified that she stayed with plaintiff at the house for months after decedent was hospitalized to provide support and detailed frequent visits by defendant to the home. She explained that defendant would visit and during this period would remove boxes and documents and recounted

3

that plaintiff never removed valuable items when she left, only some daily necessities and clothes.

Defendant also testified and explained her involvement in handling her father's bills and other responsibilities as well as her actions after his death. She detailed that she paid all estate expenses, kept copies of invoices issued for services rendered for the estate, and maintained the Middletown property. She also rebutted plaintiff's claims regarding her removal of property from the estate.

Defendant's brother testified that decedent gifted plaintiff $30,000 to permit her to pay fines and other expenses related to her visa issues. Both parties presented expert testimony that addressed the value of the Middletown property as of decedent's death. The court considered both reports and considered each expert's methodology.

Defendant's expert testified that his appraisal method was a retrospective appraisal, having walked through the Middletown property on January 3, 2024, but appraising it based on its February 6, 2022 condition. He testified that his evaluation methodology was based on measurements of the property, photos of the property taken as of the effective date, comparable market sales data, and tax records. He noted that the property "looked like a disaster" as of February 6th.

A-4086-23

He testified that the bathrooms were later fully renovated, the basement had received mechanical repairs, the floor coverings were cleaned, the wallpaper was removed, and ultimately it was "made much more livable by today's standards." He further testified that he based his $405,000 appraisal on three comparable sales in the immediate neighborhood of the Middletown property.

Plaintiff's expert testified the property was worth $475,000 based on three recent sales a tenth of a mile from the Middletown property and accounted for the increasing market prices of twenty percent due to COVID-19. He conceded, however, that he did not make a physical inspection of the property and instead relied on a 2022 Middletown tax assessor's report which assessed the property at $430,800.

After the close of all the evidence, the court considered post-trial motions, including plaintiff's motion for reconsideration, entered final judgment and explained its decision in a series of comprehensive, well-reasoned oral decisions. The court first determined that plaintiff was lawfully married to decedent and accordingly had standing to assert her right to an elective share of the augmented estate under N.J.S.A. 3B:8-1. In making this determination the court specifically found plaintiff and decedent were not living separate and apart

A-4086-23

due to any disharmony but instead as a result of plaintiff's immigration issues and any separation was not grounds for a claim for nullity or divorce.

The court ascertained the gross estate and in doing so included the: 1) Middletown property, 2) a vehicle, 3) two TD Bank accounts, 4) two Allianz annuity contracts, 5) two life insurance policies, and 6) a joint TD brokerage account and valued it at $826,917.14, and it ascertained a value of $405,000 for the Middletown property, and in doing so credited the methodology, inspection report, and testimony of defendant's expert over plaintiff's.

The court excluded the proceeds of the Allianz annuities and life insurance policies from the probate estate under N.J.S.A. 3B:8-5, because both were payable to persons other than plaintiff. In doing so it further explained that both Allianz annuities were "joint annuities . . . payable to a person other than the surviving spouse" within the meaning of the statute. The two Allianz annuity contracts list defendant and her son as beneficiaries under one contract and defendant along with her sister as beneficiaries under the second.

Both contracts are described as "[p]lan type[s] IRA" and each provide an "[a]nnuitization [v]alue . . . equal to 100% of premium paid, plus the bonus and any interest earned, minus any reductions caused by applicable charges or

A-4086-23

withdrawals . . . ." The contracts' Annuitization Values[1] are available to claimants in the event they wait "until the sixth contract year and then take annuity payments either for a period of at least [ten] years or for the life of the annuitant." The contracts further stipulate that upon death of an annuitant, "[t]he death benefit is equal to the Annuitization Value. The beneficiary may elect to receive the [d]eath [b]enefit as a lump sum payment or as annuity payments." (emphasis added).

The record provides that defendant completed a "[f]ixed [a]nnuity [c]laim [f]orm" in which she elected to claim benefits for the first Allianz contract in the capacity of an "individual beneficiary." The claim form permits beneficiaries to elect one of four different benefit options. Option one permits the beneficiary to "[c]ontinue the existing contract (spousal continuation) – available for both tax-qualified and non-tax qualified contracts." Option one "is only available if [claimant is] the beneficiary and the spouse of the deceased owner under a marriage as defined by state law." This option notes that qualifying beneficiaries are required to complete an additional section to "name a new beneficiary." The option further provides that "beneficiaries designated

---

[1]  Annuitization values is defined as periodic payments in exchange for a lump-sum account value over a specific timeframe.

A-4086-23

by the original owner no longer apply, even if you were previously a joint owner. If you do not designate beneficiaries . . . the death benefit will go to your estate."

Option two, selected by the defendant, permits the election of a "recei[pt of] a lump-sum payment." This option permits a claimant to either receive the lump sum "[i]mmediately" or under a "5-year deferral." A claimant choosing option three is permitted to "receive annuity payments" in five different variations titled A-E. Under option three, variant A, a claimant can "[r]eceive payments for a guaranteed period" and "will receive annuity payments for the guaranteed period selected below" listed under each variant as monthly, quarterly, semiannually, or annually. Variant B will provide claimants with annuity payments for the rest of their lives.

Next, variant C provides claimants with "payments for life with a guaranteed period" and "will receive annuity payments for the rest of [their] life with a guaranteed payment period" pursuant to their selection of monthly or other time periods. Variant D, the sole variant not available on all contracts, permits claimants to "payment of earned interest for a designated period of [five] or [ten] years." The final variant, E, provides claimants with "payments of a selected amount until [Allianz has] paid the entire death benefit amount." Defendant was also at liberty to choose option four and "[r]eceive payments over

8

life expectancy" to "receive annual payments based on life expectancy tables in IRS Publication 590."

The court also deducted from the probate estate funeral, administrative expenses, and enforceable claims, such as the mortgage, tax liabilities, and supported repair and maintenance expenses. The court credited the repair and maintenance expenses as enforceable claims included in the deductions for mold removal, central air and heat replacement, landscaping, housekeeping, and carpet repair as they were supported by invoices and associated checks "admitted into evidence after the [c]ourt reopened the hearing on April 22, 2024." It credited all expenses but refused to deduct other items, however, such as credit card debts and repairs to defendant's mailbox on her personal property, as it concluded there were insufficient proofs introduced at trial to support those expenses.

After applying the aforementioned deductions, the court calculated the augmented estate at $277,554.06 and plaintiff's one third elective share as $92,518.02. The court next relied on In re Estate of Cole, 200 N.J. Super. 396 (Ch. Div. 1984), and N.J.S.A. 3B:8-18A, and deducted from the calculated elective share the joint TD Ameritrade account valued at $70,736.17 as representing the survivor's own independently acquired property. After this

deduction, the court found the plaintiff was entitled to receive $21,781.85 as her elective share.

Finally, the court addressed defendant's counterclaims related to alleged damage to the Middletown property and purported conversion of personal property. Although the court determined defendant established certain expenses as enforceable repair expenses for purposes of calculating the augmented estate, but as to the counterclaim, she failed to provide that plaintiff was the cause of any alleged damages except for changing the locks after plaintiff left the home and accordingly awarded $394 for that expense. In conformity with the court's findings at trial, it entered judgment for plaintiff in the amount of $21,781.85 and for defendant in the amount of $394 and entered a judgment of no cause with respect to the remaining counterclaims.

Plaintiff moved to amend the judgment and for reconsideration and raised again her prior claims alleging issues of spoliation and fraudulent concealment. Defendant cross-moved and sought to amend the judgment to include additional enforceable claims to be deducted from the $21,781.85 elective share to $14,806.27, contending that the credit card debts to Capital One and Citi Advantage "were in fact moved into evidence by the plaintiff" and the court

erred when it did not consider these provable enforceable claims in its computation of the augmented estate.

Plaintiff also contended there was "no record to show [the] Allianz annuit[ies are] joint"; "there is a conflict in the record [with respect to] defendant's appraisal report"; documents enumerating expenses incurred were allegedly "hearsay," and defendant's testimony "regarding those documents" rendered "[defendant a] sole benefit for her"; and "the evidence regarding all th[e] . . . expenses . . . [were] never . . . produced." In response, defendant maintained the trial proofs established that the annuity contracts are joint because "beneficiaries become the annuitants when . . . the original annuitant dies." She also maintained defendant's expert was clearly "more credible", and although she did not introduce the credit card debts into evidence, they were still properly before the court as part of plaintiff's evidence and plaintiff's elective share should have included these debts.

After considering the parties written submissions and oral arguments, the court denied: (1) plaintiff's motion for reconsideration to include the Allianz annuities in the augmented estate because they are joint annuities payable to a person other than the surviving spouse and are exclusions pursuant to N.J.S.A. 3B:8-5, to increase the value of the Middletown property and to exclude post-

death renovations and expenses because defendant's expert "physically assessed the property" and plaintiff failed to show the court was palpably incorrect; and (2) its request for a spoliation hearing because the evidence in dispute was not "material to the [c]ourt's ultimate decision." The court also granted defendant's cross-motion for reconsideration to include the credit card debts in a calculation of the augmented estate as the evidence was "in fact introduced into evidence . . . and should have been considered." The court entered a corresponding order and reduced plaintiff's elective share from $21,781.85 to $14,806.27.

On appeal, plaintiff raises several arguments. She contends the trial court erred in excluding the Allianz annuities from the augmented estate, arguing they were not joint annuities. Plaintiff maintains that the court erred in its classification of the annuities as joint because decedent was the sole annuitant named in the contracts. She argues that the Allianz contracts are not joint because a joint annuitant shares the annuity payments with the primary annuitant during life and if the primary annuitant dies, then the joint annuitant continues receiving payments. She maintains that beneficiaries are designated to receive any remaining annuity benefit after the annuitant's death and do not usually receive lifetime payments. Pursuant to plaintiff's contentions, she maintains that

12

the two Allianz annuities in the value of $183,559.63 entitle her to an elective share in the amount of $61,186.54 with respect to those assets.

In response, defendant argues that the Allianz annuities are clearly joint annuities as they were payable to a person other than the surviving spouse upon the death of the annuitant. Defendant further argues that the annuities are joint and is supported by significant evidence because the benefits of the contract vested in its beneficiaries. In her reply, plaintiff argues that the Allianz annuities are both single-life annuities, which pay income to a single annuitant for the duration of their lifetime, and not a joint annuity, which pay income to two people for as long as either one is alive.

Plaintiff also contends that the court improperly valued the Middletown property. Specifically, she maintains that the court's ascertained value of the property was based upon defendant's conflicting testimonies and that the court failed to make any credibility findings with respect to defendant's description of the home and thus, the defendant's expert's appraisal was inaccurate. Plaintiff further argues that the court erred in allowing deductions for post-death remediation of the Middletown property, in admitting certain documents the defendant allegedly concealed in justifying the renovation costs for the home. Plaintiff also argues that the court erred in not applying a spoliation inference

13

with respect to documents related to the renovation costs and Allianz contracts alleging that defendants did not disclose these documents during discovery and intentionally withheld them. We reject all of plaintiff's arguments.

II.

We begin with the established standard of review in an appeal from a bench trial. "The scope of [our] review of a trial court's fact-finding function is limited." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 411 (1998)). We review a trial court's factual findings "premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "We are not to review the record from the point of view of how we would have decided the matter if we were the court of first instance." Sebring Assocs. v. Coyle, 347 N.J. Super. 414, 424 (App. Div. 2002). "Factual findings premised upon evidence admitted in a bench trial 'are binding on appeal when supported by adequate, substantial, credible evidence.'" Potomac Ins. Co. of Ill by OneBeacon Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 215 N.J. 409, 421 (2013) (quoting Cesare, 154 N.J. at 411-12). Further, we "defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them

testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

"'Only when the trial court's conclusions are so "clearly mistaken" or "wide of the mark"' should we interfere to 'ensure that there is not a denial of justice.'" Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, we review de novo the "trial court's interpretation of the law and the legal consequences that flow from established facts." D'Agostino, 216 N.J. at 182-83 (quoting Treatments Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A trial court has "broad discretion in determining the relevance of evidence." Verdicchio v. Ricca, 179 N.J. 1, 34 (2004). We do not overturn a trial court's evidentiary rulings "unless it can be shown that the trial court palpably abused its discretion." See ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). "It [i]s within the trial court's wide discretion to accept or reject an expert's testimony, either in whole or in part." Sipko v. Koger, Inc., 251 N.J. 162, 188 (2022). The judge, as factfinder, "must weigh and evaluate the experts' opinions, including their credibility, to fulfill the judge's responsibility in reaching a reasoned, just and factually supported

A-4086-23

conclusion." Pansini Custom Design Assocs., LLC v. City of Ocean City, 407 N.J. Super. 137, 144 (App. Div. 2009). "The court need not give the expert's opinion 'greater weight than other evidence [ ]or more weight than it would otherwise deserve in light of common sense and experience.'" E&H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 29 (App. Div. 2018) (quoting Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)).

The intent of N.J.S.A. 3B:8-1, "was to prohibit disinheritance of a surviving spouse who needs continuous support." In re Est. of Brown, 448 N.J. Super. 252, 269 (App. Div. 2017). "[T]he spousal elective share 'provides a kind of statutory safety net to . . . a surviving spouse.'" L.G. v. Dep't of Hum. Servs., 386 N.J. Super. 282, 290 (App. Div. 2006) (quoting In re Est. of Friedlein, 230 N.J. Super. 100, 105 (App. Div. 1989)). It "provide[s] a surviving spouse with an option to take one-third of the estate if he or she were not adequately provided for by the decedent.'" Est. of Brown, 448 N.J. Super. at 269-70 (quoting In re Est. of Hersh, 195 N.J. Super. 74, 77 (App. Div. 1984)).

The elective share equals "one-third of the augmented estate," N.J.S.A. 3B:8-1, and "[t]he augmented estate consists of the value of all property of both the deceased and surviving spouse as well as other property transferred to third parties without adequate consideration before the decedent's death." I.G., 386

16                                                                              A-4086-23

N.J. Super. at 290 (internal quotations omitted) (quoting Friedlein, 230 N.J. Super. at 104).  However, "any life insurance . . . joint annuity or pension payable to a person other than the surviving spouse or domestic partner" shall "be excluded from the augmented estate."  N.J.S.A. 3B:8-5.

"An annuity is a contract between an issuer, usually an insurance company, and an owner under which the owner purchases the right to receive periodic payments for a fixed term or for the life of the annuitant."  8 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 91.01 (2013) (first citing Lander v. Hartford Life & Annuity Ins. Co, 251 F.3d 101, 104-105 (2d Cir. 2001); In re Rhinebolt, 131 B.R. 973 (Bankr. S.D. Ohio 1991) ("An annuity . . . is an obligation by  a person or a company to pay to the annuitant a certain sum of money at stated times during life or a specified number of years, in consideration of a gross sum paid for such obligation"); and then citing Boykin v. Law, 946 So. 2d 838 (Ala. 2006) (quoting Turrentine v. Perkins, 46 Ala. 631 (1871)) ("An annuity is a yearly sum stipulated to be paid to another in fee, or for life, or years . . . .")).  In fact, the Supreme Court has defined an annuity as "an amount payable yearly or at other regular intervals . . . for a certain or uncertain period (as for years, for life, or in perpetuity)."  Rousey v. Jacoway,

A-4086-23

544 U.S. 320, 330 (2005) (citing J. Langbein & B. Wolk, Pension and Employee Benefit Law, 48 (3d ed. 2000)).

In addition, the Eleventh Circuit Court of Appeals, referenced Black's Law Dictionary and defined an annuity as "[a] right to receive fixed, periodic payments, either for life or for a term of years." In re McCollam, 986 F.2d 436, 438 (1993) (citing Black's Law Dictionary 90 (6th ed. 1990)); see also Black's Law Dictionary 1000 (12th ed. 2024) (providing that to be considered joint, the subject must be "common to or shared by two or more persons or entities."). The court also noted other courts "defined an annuity as 'a yearly payment of a certain sum of money granted to another in fee for life or for years . . . in its broader sense it designates a fixed sum . . . payable periodically, at aliquot parts of a year, at stated intervals, and not necessarily annually.'" In re McCollam, 986 F.2d at 348 (citing In re Gefen, 35 Bankr. 368, 371 (Bankr. S.D. Fla. 1984)).

III.

We are convinced the court correctly concluded that the Allianz contracts are joint annuities. We acknowledge plaintiff's arguments that there is a fundamental difference between a beneficiary and a joint annuitant and a beneficiary is most often mentioned in the context of life insurance policies. The "fundamental differences between annuities and life insurance lie in the

A-4086-23

benefit and timing of each. A life insurance policy is intended to provide financial protection to a beneficiary who suffers harm as a result of the death of the insured. Life insurance protects against the risk of mortality." New Appleman on Insurance Law Library Edition § 91.01[2]. As noted, an "annuity, on the other hand, is intended to provide income to the annuitant during the lifetime of the annuitant. An annuity typically provides a stream of monthly or lump sum payments." Id. (citing Klein v. Am. Life & Cas. Co., 858 So. 2d 527 (La. Ct. App. 2003)).

The Allianz contracts are clearly annuities because they permit claimants to receive a lump sum or periodic payments in separate installments consistent with the Supreme Court's definition of an annuity. See Jacoway, 544 U.S. at 330; see also In re McCollam, 986 F.2d at 482. Furthermore, as the court concluded, the Allianz contracts are correctly characterized as joint annuities because they permit the substitution of the first annuitant, the decedent, with a second annuitant at a claimant's election. In addition, the shared nature of the annuity benefits between decedent and defendant evinces a joint annuity. Thus, the court appropriately excluded the Allianz contracts because joint annuities are excluded from the augmented estate when, as here, the benefits are payable to a person other than the surviving spouse. See N.J.S.A. 3B:8-5.

We are satisfied that this finding is supported by the evidence and consistent with IRS guidance defining a joint annuity as one in which the first annuitant receives payments for life, and after their death, a second annuitant receives payments for life.[2] As noted, the Allianz contracts expressly permit defendant to step into the shoes of the decedent and receive annuity payments for the remaining period of the contract. Pursuant to defendant's election to serve as a second annuitant, Allianz would have remained obligated to provide payments to defendant until the decedent's entire death benefit had been paid out under the claim form's option three variant A.

We acknowledge defendant elected to receive a lump sum payment under the contracts, but her ability to become a second annuitant and receive payments for the remaining period of the contracts remained an option under the claim form's option three variant A as noted, and which supports the court's characterization of the Allianz contracts as joint annuities. We also note that plaintiff has provided no legal support for the proposition that a joint annuity

---

[2] See Publication 575 (2025), Pension and Annuity Income, IRS, https://www.irs.gov/publications/p575#en_US_2025_publink1000226693 (defining joint and survivor annuitants where "[t]he first annuitant receives a definite amount at regular intervals for life. After they die, a second annuitant receives a definite amount at regular intervals for life. The amount paid to the second annuitant may or may not differ from the amount paid to the first annuitant.").

and a joint annuitant exist only in the instance that they share annuity payments with the primary annuitant during their lifetime.

As noted by the court, if the annuity was a single life annuity it would not provide the decedent with the ability to appoint a beneficiary. In such a case, the annuity and any outstanding value would be included within the estate. Instead, here, the annuity's contractual provisions expressly permit the beneficiaries to elect to "receive annuity payments" for a selected period between five and thirty years in monthly, quarterly, semiannual, or annual payments. Plaintiff inaccurately reads the Allianz contracts as they in fact provide the beneficiaries with options to either step into the shoes of the original annuitant as a second annuitant or to receive a lump sum payment. For these reasons, we are satisfied the court appropriately concluded that the Allianz annuity contracts were joint and that they were excludable from the augmented estate pursuant to N.J.S.A. 3B:8-5 as they were payable to a person other than the surviving spouse.

21

## IV.

Next, we discern no error in the court's decision to accept defendant's expert's opinion and methodology with respect to the value of the Middletown property as opposed to plaintiff's, or in admitting his report.  See State v. McGuire, 419 N.J. Super. 88, 123 (App. Div. 2011).  "The qualifications of an expert and the admissibility of opinion or similar expert testimony are matters left to the discretion of the [court]."  Ibid. (citing State v. Torres, 183 N.J. 554, 572 (2005)).

Here, the court's discretionary credibility-based decision is entitled to our deference and is fully grounded in the record.  Indeed, the court specifically found "defendant's expert report to be more credible" because "[d]efendant's expert . . . physically assessed the property."  See Gnall, 222 N.J. at 428 (quoting Cesare, 154 N.J. at  412) (this court "defer[s] to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'").  We have no basis to deviate from the court's determination.

V.

Similarly, we are satisfied the court did not err in allowing deductions for post-death expenses, as these costs were supported by the evidence and found to be enforceable claims. Specifically, the court identified the various post-death invoices for mold removal, central air and heat replacement, landscaping, housekeeping, and carpet repair. The court, in addressing defendant's counterclaims, explained it expressly limited its deductions to which defendant could establish were either enforceable repair expenses or damage caused by plaintiff's actions. In light of plaintiff's extensive cross-examination of defendant with respect to the incurred expenses, we are satisfied the court correctly relied on the submitted invoices to support the post-death renovation expenses in its computation of the augmented estate.

Furthermore, we reject plaintiff's arguments that the remediation of the property was solely to benefit defendant and her son, because, as the court noted, the repair costs to the estate's Middletown property "were incurred for legitimate reasons . . . defendant paid them . . . and . . . did so in her fiduciary capacity as executrix of decedent's estate." As supported by defendant's expert's testimony and credited by the court in its final evaluation of the property, the post-death

23

renovations were required to ensure the property remained "livable by today's standards."

VI.

Finally, the court also properly rejected plaintiff's arguments regarding spoliation and concealment, finding no basis to conclude that any relevant evidence was destroyed or withheld so as to impede plaintiff's ability to litigate the case and thus are convinced the court did not commit any error when it denied plaintiff's request to apply an adverse inference charge based upon defendant's alleged spoliation of evidence. "Spoliation typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case." Jerista v. Murray, 185 N.J. 175, 201 (2005) (citing Rosenblit v. Zimmerman, 166 N.J. 391, 400-01 (2001)). Our courts have expanded the remedies available to courts dealing with spoliating parties by permitting the use of discovery sanctions and adverse inferences and have authorized courts to use more than one such remedy if circumstances warrant it. Robert Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 272 (2015) (citations omitted).

Whether a duty exists to preserve the evidence in the first instance is a question of law to be resolved by the court. Davis v. Barkaszi, 424 N.J. Super.

A-4086-23

129, 148 (App. Div. 2012) (citing Cockerline v. Menendez, 411 N.J. Super. 596, 620 (App. Div. 2010)), cert. denied, 201 N.J. 499, 992 (2010).  The duty "arises when there is pending or likely litigation between two parties, knowledge of this fact by the alleged spoliating party, evidence relevant to the litigation, and the foreseeability that the opposing party would be prejudiced by the destruction or disposal of this evidence."  Cockerline, 411 N.J. Super. at 620.  Based on our review of the record, we are satisfied that the court correctly dismissed plaintiff's request to apply an adverse inference charge as the evidence in dispute was neither concealed nor destroyed and did not impede plaintiff's ability to litigate the case.

In sum, we are satisfied the trial court's decision was grounded in its findings that the Allianz annuities were joint annuities payable to persons other than the surviving spouse and thus excluded them from the augmented estate under N.J.S.A. 3B:8-5.  As noted, the court accepted defendant's expert's appraisal of the real property, found the claimed post-death expenses to be enforceable claims, and rejected plaintiff's arguments regarding spoliation and concealment.  The court's oral and written decisions reflect a careful consideration of the evidence and the applicable law.  To the extent we have not addressed a particular argument, it is because either our disposition makes it

unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-4086-23